STATE OF NORTH CAROLINA v. MARK YANANOKWIAK

No. 8312SC398

(Filed 20 December 1983)

**Searches and Seizures § 7— warrantless search—no exigent circumstances—circumstances requiring warrant**

    In a prosecution for felonious possession of marijuana with intent to sell, trafficking in cocaine and conspiracy to traffic in cocaine, the trial judge correctly concluded that the warrantless entry into defendant's home violated defendant's Fourth Amendment rights where the evidence tended to show that police could easily have obtained sufficient information to constitute probable cause before arriving at defendant's home, there was insufficient evidence of exigent circumstances to excuse the warrantless entry, and defendant's signed consent form was "tainted" by the original illegal entry.

APPEAL by plaintiff from *Battle, Judge.* Order entered 7 February 1983 in CUMBERLAND County Superior Court. Heard in the Court of Appeals 30 November 1983.

Defendant was arrested without a warrant in his Fayetteville home on 26 August 1982 and charged with felonious possession of marijuana with intent to sell, trafficking in cocaine and conspiracy to traffic in cocaine. More than twenty-eight ounces of cocaine, an undisclosed amount of marijuana and drug paraphernalia were seized during a warrantless search of defendant's residence following his arrest.

The facts found in the trial court's order granting defendant's motion to suppress are in summary as follows. Officer W. H. Simons of the Cumberland County Bureau of Narcotics and an anonymous informant attempted to buy cocaine from a man named Mark Klouda in a Fayetteville shopping center in the early evening of 26 August 1982. Klouda was arrested when he agreed to sell Simons two ounces of cocaine for $3,800.00. Shortly thereafter, while at the police station, Klouda agreed to help Simons arrest his drug supplier, whom Klouda identified as de-

fendant, Mark Yananokwiak. Klouda did not know defendant's exact street address, but offered to guide police to the house. Accordingly, Klouda was equipped with a concealed microphone and, accompanied by a number of undercover agents and Simons, drove to defendant's home. Klouda entered the home and police heard him tell defendant that he had made the sale and that the money was outside in his car. Klouda emerged from the house, retrieved the $3,800.00, and went back into defendant's house. Police then heard Klouda say, "they want another ounce; here's your money," followed by the sounds of someone counting money and shaking something. Police next heard Klouda ask, "[i]s that enough for a whole ounce? Is it as good as the other stuff? . . . What's that?" A voice identified as defendant's responded, "[the] [c]ut."

The waiting undercover agents then rushed into the kitchen of defendant's home, where they found defendant bending over a scale, mixing white powder with a playing card. Defendant was arrested and, after about five minutes, agreed to permit officers to search the home, resulting in the discovery of drugs and paraphernalia in a back bedroom.

The trial judge concluded that the warrantless entry into defendant's home violated defendant's Fourth Amendment rights. From the trial judge's order granting defendant's motion to suppress, the state has appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Harry H. Harkins, Jr., for the State.*

*Harris, Sweeny & Mitchell, by Ronnie M. Mitchell, for defendant.*

WELLS, Judge.

The state, in arguing that the trial judge erred in granting defendant's motion to suppress evidence seized in his home following his arrest, first contends that there was no probable cause to arrest defendant or search his home until the police actually overheard Klouda's conversation with defendant, and that therefore they could not have obtained a warrant before that time. Second, the state contends that once the police had probable cause, exigent circumstances existed which eliminated the need for a

warrant. We disagree with both aspects of the state's argument and affirm the trial court's order.

The controlling test for determining when police have probable cause to arrest or to search, based upon information received from confidential informants is set forth in *Illinois v. Gates*, --- U.S. ---, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983). In *Gates*, the Supreme Court held that courts should review the "totality of the circumstances" in determining whether there was probable cause for issuance of a search warrant. The *Gates* opinion overrules the more rigid two-pronged Aguilar-Spinelli test which required affidavits supporting a warrant to demonstrate (1) the basis of the tipster's knowledge and (2) past reliability of the tipster. Under *Gates*, the Aguilar-Spinelli factors remain relevant but are not the sole factors in determining if probable cause is present.

In the case before us, we hold that the facts found show the police could easily have obtained sufficient information to constitute probable cause before arriving at defendant's home. The county narcotics bureau had received a number of anonymous telephone calls indicating that a young enlisted man was selling cocaine in the Fayetteville area. This information was further corroborated by the tipster who accompanied Simons to "buy" drugs from Klouda, and who had proven very reliable in the past. Next, Klouda supplied Simons with information which corroborated what Simons already knew, and revealed the name of his drug supplier. Although Klouda had not established a "track record" of reliable tips, it was clearly in his own interest to be truthful with police in this instance. The state argues that Klouda did not know defendant's exact address, and therefore there was insufficient information to obtain a warrant. It would have been an easy matter, however, for the police to go with Klouda to defendant's home, get the exact address and then obtain a warrant while other agents watched the house. The evidence before the trial court showed that several hours elapsed between Klouda's arrest and the time when police entered defendant's home, giving them ample time in which to obtain a warrant.

We turn now to the state's contention that once probable cause to arrest defendant was established, exigent circumstances were also present, excusing police from obtaining a warrant.

State v. Yananokwiak

The standard for warrantless home arrests was set out in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed. 2d 639 (1980). In *Payton*, the Supreme Court held that the Fourth Amendment bars police from making a warrantless, nonconsensual entry into a suspect's home to carry out a routine felony arrest, in the absence of exigent circumstances. While setting out a broad rule, the Supreme Court refused to define exigent circumstances explicitly. Larkin, *Exigent Circumstances for Warrantless Home Arrests*, 23 Ariz. L. Rev. 1171 (1981). Most of the development of the term, therefore, has occurred in decisions of lower courts. *Id.* Courts have developed two somewhat different methods of determining when exigent circumstances exist. The so-called "checklist" approach was developed in *Dorman v. United States*, 435 F. 2d 385 (D.C. Cir. 1970), and has been followed by the courts of many states, including North Carolina. *State v. Allison*, 298 N.C. 135, 257 S.E. 2d 417 (1979). The *Dorman* checklist consists of the following factors: (1) a grave offense is charged, (2) reasonable belief that the defendant is armed, (3) more than "minimal" probable cause to believe defendant is guilty, (4) reasonable belief that defendant is on the premises to be searched, (5) likelihood defendant will escape, if not arrested swiftly and (6) entry may be made peacefully. Other courts, however, approach the problem using a more traditional, broader "totality of the circumstances" test. Harbaugh & Faust, *Knock on Any Door—Home Arrests After Payton and Steagald*, 86 Dick. L. Rev. 191 (1982). Although still widely used, the *Dorman* checklist test has been justifiably criticized by a number of commentators. *See, e.g.*, Larkin, *supra*; Harbaugh & Faust, *supra*; Donnino & Girese, *Exigent Circumstances for a Warrantless Home Arrest*, 45 Albany L. Rev. 90 (1980); 2 LaFave *Search and Seizure*, § 6 (1978).

One criticism of the checklist approach is that it is impractical and cannot be consistently applied by police in the field. Second, a number of the factors are outdated or irrelevant to the question of exigency. For instance, the element of peaceable entry is a conclusion made after the arrest occurs, and does not go to the issue of whether police are justified in entering without a warrant in the first place. The requirement of more than "minimal" probable cause again is irrelevant to the exigency issue and the belief that the suspect is at home is relatively mean-

ingless since it is present in most cases, Donnino & Girese, *supra.* Further, at least two United States Supreme Court cases decided after *Dorman* have ignored several of the checklist factors. *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed. 2d 300 (1976) and *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed. 2d 782 (1967) permitted warrantless seizures where there was no finding that the defendant was armed, or that more than "minimal" probable cause was present or that peaceful entry into the home was possible. Finally, the *Dorman* checklist makes no mention of hot pursuit or destruction of evidence, which are both commonly recognized as grounds for warrantless seizures. Larkin, *supra.* The third major criticism of the checklist approach is that it is too narrow and fails to take into account other important common-sense factors, such as whether officers make the entry in a reasonable manner and within the amount of time it would have taken them to obtain a warrant. Harbaugh & Faust, *supra.* For these reasons, we believe the totality of the circumstances test is the better approach, and is more in line with the broad *Gates* test.

Applying the "totality" test to the case before us, we hold there was insufficient evidence of exigent circumstances to excuse the warrantless entry into defendant's home. The state does not argue that exigent circumstances existed when police were at the law enforcement center with Klouda, nor do the facts indicate that police believed defendant was about to escape or destroy evidence. We hold further that exigent circumstances did not exist when police overheard the conversation between defendant and Klouda outside defendant's home. Klouda and defendant had conducted drug deals before, and there was no showing that defendant suspected Klouda of being an informant or was uneasy over the time lapse between Klouda's "sale" to Officer Simons and his return to defendant's home. Nor did the police hear anything which might reasonably lead them to conclude that defendant was about to escape or destroy evidence. The state's argument that exigency is shown simply because drugs are easily destroyed would permit the exigency exception to swallow the entire warrant requirement. Although the state notes that drug dealers frequently own guns or other weapons and are violent, there is no showing that this particular defendant was armed or was dangerous. It was of course obvious that police were not in

"hot pursuit" of defendant as several hours had elapsed between the time police learned of defendant's name and the time when he was arrested. The only time at which exigent circumstances existed in this case was at the moment police entered defendant's home, thereby revealing that he was about to be arrested. This circumstance, however, was created by the police themselves and may not be presented as an argument to support their warrantless actions. *See Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed. 2d 409 (1970).

Although not discussed in the state's brief, we note that defendant signed a consent form, permitting police to search his home about five minutes following his arrest. As a general rule, evidence obtained following an illegal intrusion into a defendant's home is "tainted" by the original illegal entry and is therefore inadmissible. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963). To be admissible, the evidence must be shown to be the product of "an intervening, independent act of free will . . ." *Id.* In *Wong Sun,* six or seven policemen broke down the door to defendant's home, chased defendant down the hall awakening his family, and immediately arrested and handcuffed defendant. Soon thereafter, defendant made inculpatory statements, which the state sought to introduce, despite the illegality of the initial entry into defendant's home. The United States Supreme Court determined that "[u]nder such circumstances it is unreasonable to infer that [defendant's] . . . response was sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Id.* In the case before us, defendant signed the written consent form shortly after a number of officers stormed suddenly into his kitchen and placed him under arrest. We believe that these circumstances are sufficiently similar to *Wong Sun* to require us to conclude that defendant's consent to the search of his home was insufficiently independent of the illegal entry.

Because there was ample evidence to support the trial judge's findings of fact and because the findings of fact support the conclusion that defendant's Fourth Amendment rights were violated, the order of suppression must be

Affirmed.

Judges WEBB and WHICHARD concur.