STATE OF NORTH CAROLINA v. GREGORY LEE NOWELL AND MICHAEL LYNN TAYLOR

No. COA00-697

(Filed 17 July 2001)

## 1. Search and Seizure— warrantless search of residence— exigent circumstances—drugs

The trial court erred in a drug possession and trafficking in marijuana case by concluding there were exigent circumstances to permit the law enforcement officers' warrantless entry into a defendant's residence and the evidence obtained as a result of this unlawful entry must be suppressed, because: (1) evidence the parties were going to destroy the amount of marijuana required for one "joint" from the approximately fifty pounds of

STATE v. NOWELL

[144 N.C. App. 636 (2001)]

marijuana present in the residence is not an exigent circumstance; and (2) defendant's consent to the search was tainted by the illegal entry into the residence.

**2. Drugs— possession—trafficking in marijuana—motion to dismiss—sufficiency of evidence**

The trial court erred in a marijuana possession and trafficking in marijuana case by failing to grant defendant's motion to dismiss the charges against him, because the evidence viewed in the light most favorable to the State does not show defendant had both the power and intent to control the marijuana located in his codefendant's residence at the time law enforcement officers entered the residence.

Judge JOHN concurring in part and dissenting in part.

Appeal by defendants from judgments dated 8 December 1999 by Judge Richard B. Allsbrook and appeal by defendant Nowell from a 7 June 1999 order by Judge Quentin T. Sumner in Halifax County Superior Court. Heard in the Court of Appeals 15 May 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General T. Brooks Skinner, Jr., for the State.*

*Moseley, Elliott, Sholar and Dickens, L.L.P., by William F. Dickens, Jr., for defendant-appellant Nowell.*

*Jesse F. Pittard, Jr. for defendant-appellant Taylor.*

GREENE, Judge.

Gregory Lee Nowell (Nowell) appeals from judgments dated 8 December 1999 entered after a jury rendered verdicts finding him guilty of pos: of marijuana with intent to sell or deliver, knowingly possessing drug paraphernalia with the intent to use it, knowingly keeping and maintaining a dwelling house for the purpose of keeping and selling controlled substances, and trafficking in marijuana by possessing in excess of 10 pounds but less than 50 pounds of marijuana. Nowell also appeals from the trial court's 7 June 1999 order denying his motion to suppress evidence. Additionally, Michael Lynn Taylor (Taylor) appeals judgments dated 8 December 1999 entered after a jury rendered verdicts finding him guilty of trafficking in marijuana by possessing in excess of 10 pounds but less than 50 pounds of marijuana and possessing marijuana with intent to sell or deliver. Nowell and Taylor were tried in a joint trial.

*Suppression hearing*

The record shows that prior to trial, Nowell filed a motion to suppress evidence obtained as a result of a 3 March 1999 search of his residence. Specifically, Nowell sought suppression of "any article, thing[,] or testimony obtained as a result of this illegal arrest, illegal search, [and] illegal seizure." At a hearing on Nowell's motion, the State presented evidence that on 3 March 1999, Lieutenant Don Stanfield (Stanfield) was employed by the Halifax County Sheriff's Department as "Lieutenant in charge of all narcotics operations." On that day, Stanfield was notified by a law enforcement officer that approximately fifty pounds of marijuana had been seized from a vehicle traveling on Interstate 95 in Cumberland County. The vehicle was driven by Jerry Strickland (Strickland), and Juan Valles (Valles) was a passenger in the vehicle. Additionally, the law enforcement officer provided Stanfield with a map to a residence located in Halifax County where the law enforcement officer believed the marijuana was to be delivered. Stanfield subsequently determined that Nowell lived at the residence.

Later that day on 3 March 1999, law enforcement officers from Cumberland County arrived at the Halifax County Sheriff's Department, and Strickland was in the officers' custody. Strickland informed Stanfield that he had had "numerous dealings" with Nowell in the past. As part of those "dealing," Strickland and Nowell would schedule a delivery of marijuana, and Strickland would transport the marijuana to Nowell's residence. After Strickland arrived at Nowell's residence, Nowell usually "would have to go get the rest of the money and leave [Strickland] there until . . . Nowell would return with the money and the deal would be done in the selling of marijuana." Based on this information, Stanfield decided law enforcement officers would participate with Strickland in a "controlled delivery" of marijuana to Nowell. Strickland agreed to wear a "body wire" and to deliver the marijuana to Nowell; however, Sergeant E.M. Buffaloe (Buffaloe) of the Halifax County Sheriff's Department, rather than Valles, would accompany Strickland during the delivery. Tim Byers (Byers), a narcotics investigator for the Weldon Police Department, was able to listen to the activities taking place during the delivery through the body wire placed on Strickland. Additionally, Stanfield was in radio contact with Buffaloe.

After Strickland and Buffaloe arrived at Nowell's residence to make the controlled delivery, Strickland carried one of the suitcases into the residence while Buffaloe remained in the vehicle. Strickland

subsequently returned to the vehicle and informed Buffaloe that Nowell "had to go get the rest of the money" and "wanted to carry a piece of the marijuana with him." Buffaloe, however, refused to permit Nowell to leave the premises with any of the marijuana. While Buffaloe and Strickland remained at Nowell's residence, Nowell left the residence to obtain the "rest of the money." Sometime later, Nowell returned to the residence accompanied by Taylor, and Strickland, Taylor, and Nowell went inside the residence. Stanfield was then contacted via radio by Byers, and Byers informed him that "the deal had been talked about, how good the sh— was, and they were in the process of asking for rolling papers and want to roll a doobie and smoke a joint." Stanfield "felt like that was the time that [the officers] needed to make an arrest before [Nowell and Taylor] could consume any drugs." Stanfield directed the other officers to enter the residence and Stanfield entered the residence "seconds" after the other officers. Nowell and Taylor were standing in the kitchen area when Stanfield entered the residence, and Stanfield saw "approximately fifty pounds of marijuana open, some of it cut open, and strewed on the counter along with big wads of money." The money amounted to "[c]lose to forty thousand dollars." Nowell and Taylor were arrested, and Buffaloe asked Nowell whether "he could have consent to search the rest of the [residence]." Nowell responded that he "didn't give a sh— but [that] he [would not] sign nothing." The residence was then searched and drug paraphernalia was recovered.

Byers testified at the suppression hearing that he was involved in monitoring the 3 March 1999 controlled delivery of marijuana to Nowell's residence. Through a listening device placed on Strickland, Byers was able to hear Strickland's conversation inside Nowell's residence. Based on what he was able to hear, Byers became aware that Nowell and Taylor were preparing to "consume" marijuana and he also became aware of "the actual purchase of the approximate fifty pounds of marijuana." At that time, Byers communicated to Stanfield through a radio transmission that "the consumption was about to take place and [they] needed to move in." Stanfield then "gave the order to . . . Buffaloe and the other members of his team to enter the residence and effect the arrest."

At the conclusion of the suppression hearing, the trial court stated:

> The [c]ourt finds that this is an arrest supported by probable cause, that the officers in fact had probable cause, that [Nowell] was arrested, that [Nowell] voluntarily gave a consent for the

**STATE v. NOWELL**

[144 N.C. App. 636 (2001)]

search and the [c]ourt finds specifically that [Nowell] in reference to the question, "Can we search the residence?" replied, ["]He didn't give a sh— but he wasn't going to sign nothing.["] The [c]ourt finds that viewing the totality of circumstances[,] . . . that is a voluntary consent and officers were proper in executing that consent based on voluntariness of response to their question.

The trial court therefore denied Nowell's motion to suppress.

### Trial

The State presented evidence at trial that on 3 March 1999, Carey Lewis (Lewis), a law enforcement officer employed by the North Carolina Division of Motor Vehicles Enforcement Section, was patrolling Interstate 95 in Cumberland County. Lewis testified that on that morning he pulled over a vehicle driven by Strickland and in which Valles was a passenger because the vehicle was "weaving over into the emergency lane." Strickland appeared nervous, and Lewis asked Strickland for permission to search the vehicle. Strickland gave verbal consent for Lewis to search the vehicle, and Lewis found two suitcases in the trunk of the vehicle containing what he believed to be marijuana. Lewis notified the Cumberland County Narcotics Unit and, after other law enforcement officers arrived at the scene, Strickland and Valles were arrested and transported to the Cumberland County Sheriff's Department. Later that day, Strickland and Valles were transported to Halifax County for the purpose of arranging a controlled delivery of the marijuana to Nowell.

Strickland testified that on 3 March 1999, he was taken into custody for possession of marijuana and, after being taken into custody, he admitted to law enforcement officers that he "had made arrangements with . . . Nowell to pick up the drugs, bring them back from Texas to North Carolina and bring them to [Nowell's] house." Strickland agreed with law enforcement officers to participate in a controlled delivery of the marijuana to Nowell. Strickland also consented to wear a body wire during the controlled delivery. Several hours after Strickland agreed to participate in the controlled delivery, he and Buffaloe, who was acting as Valles, drove to Nowell's residence. When they arrived, Buffaloe remained in the vehicle while Strickland went into the residence carrying one of the suitcases containing marijuana. Inside the residence, Strickland opened up the suitcase and "took out a brick [of marijuana] that had already been cut open and showed [Nowell] what it was, what it smelled like, and an approximation of how many pounds that [Strickland] had." Nowell

determined the marijuana "was a good quality" and informed Strickland that Nowell "would have to go and get the rest of the money from . . . Taylor." The total cost of the marijuana was $850.00 per pound and the delivery included approximately fifty pounds. Nowell told Strickland that there was approximately $11,000.00 or $12,000.00 in Nowell's residence at that time. Nowell then left his residence for approximately one hour and Strickland waited in the vehicle with Buffaloe. When Nowell returned to his residence, Strickland went into the residence carrying the second suitcase. Strickland placed the second suitcase on the couch beside the first suitcase. A few minutes later, Taylor arrived at the residence and went inside. The money that was already in the residence was placed on the kitchen counter and Taylor placed some additional money on the kitchen counter. Either Nowell or Taylor "cut open the brick [of marijuana] further" and Taylor stated that he "was going to smoke [some of the marijuana]." Law enforcement officers then entered the residence and handcuffed the defendants.

Byers testified that during the controlled delivery, he remained in a law enforcement vehicle in the area of Nowell's residence. Byers was able to listen to Strickland's activities through transmissions from the body wire Strickland was wearing. After Strickland's initial entry into Nowell's residence, Strickland returned to his vehicle and spoke to Buffaloe. Buffaloe asked Strickland some general questions regarding who was inside the residence, and Buffaloe instructed Strickland "to proceed on with the deal." Byers then heard Nowell say that he had to leave the residence to obtain the rest of the money for the marijuana from Taylor. After Nowell returned to the residence, Byers continued to listen to the parties through the wire transmissions. Strickland asked Nowell if he "ha[d] the money," and Nowell responded that "[Taylor was] on his way." Taylor then arrived at the residence and informed Strickland that he had "the money." Next, Byers heard Taylor say "let's roll one or let's burn one or something to that extent." Byers immediately notified the other law enforcement officers "that they were going to smoke one and that [the law enforcement officers] needed to enter [the residence]." Law enforcement officers, including Byers, then entered the residence. Inside the residence, Byers saw a "brick" of marijuana on the kitchen "bar," as well as "marijuana residue," a razor, and "a large amount of cash."

Buffaloe testified that he accompanied Strickland to Nowell's residence during the controlled delivery. Buffaloe remained in a vehicle

located outside of the residence while Strickland went inside the residence. After Strickland carried one suitcase containing marijuana inside the residence, Nowell left the residence for approximately one hour and forty-five minutes. Nowell then returned to the residence and Taylor arrived thereafter. Approximately two or three minutes after Taylor entered the residence, Buffaloe received a radio transmission instructing him to enter the residence. Upon entering, Buffaloe saw Strickland standing "in the living room area just a foot away from the kitchen counter." Additionally, Buffaloe saw Taylor and Nowell standing behind the kitchen counter. Taylor was "standing behind a single brick of marijuana" and Nowell was "standing behind a brick of marijuana" and was "trying to peel it open." Buffaloe could see money on the counter.

Stanfield gave testimony at trial consistent with his testimony during the suppression hearing.

At the close of the State's evidence, Nowell and Taylor made motions to dismiss the charges against them. The trial court denied the motions. Neither Nowell nor Taylor offered any evidence at trial.

---

The issues are whether: (I) exigent circumstances existed to permit the law enforcement officers' warrantless entry into Nowell's residence and, if not, whether evidence obtained as a result of the unlawful entry into Nowell's residence should have been suppressed; and (II) the record contains substantial evidence Taylor possessed marijuana.

I

Nowell

[1] Nowell argues exigent circumstances justifying a warrantless search of his residence were not present; therefore, Nowell's motion to suppress all evidence obtained as a result of the search of his residence should have been granted.

*Warrantless search*

When a defendant in a criminal prosecution makes a motion to suppress evidence obtained by means of a warrantless search, the State has the burden of showing, at the suppression hearing, "how the [warrantless search] was exempted from the general constitutional demand for a warrant." *State v. Cooke*, 306 N.C. 132, 135, 291

S.E.2d 618, 620 (1982). "A warrantless search is lawful if probable cause exists to search and the exigencies of the situation make search without a warrant necessary." *State v. Mills*, 104 N.C. App. 724, 730, 411 S.E.2d 193, 196 (1991). Exigent circumstances sufficient to make search without a warrant necessary include, but are not limited to, the probable destruction or disappearance of a controlled substance. *Id.* at 731, 411 S.E.2d at 197; *State v. Smith*, 118 N.C. App. 106, 113, 454 S.E.2d 680, 685, *reversed on other grounds*, 342 N.C. 407, 464 S.E.2d 45 (1995), *cert. denied*, 517 U.S. 1189, 143 L. Ed. 2d 779 (1996). A determination of whether exigent circumstances are present must be based on the "totality of the circumstances." *State v. Yananokwiak*, 65 N.C. App. 513, 517, 309 S.E.2d 560, 563 (1983).

In this case, it is undisputed that law enforcement officers entered Nowell's residence without a warrant. Evidence presented at the suppression hearing shows law enforcement officers participated in a controlled delivery of approximately fifty pounds of marijuana to Nowell's residence. After the marijuana had been taken into Nowell's residence by Strickland, Taylor and Nowell asked for rolling papers so that they could "smoke a joint." Immediately thereafter, law enforcement officers entered Nowell's residence. This evidence, which was not controverted, shows that the amount of marijuana required for one "joint" was going to be destroyed at the time law enforcement officers made a decision to enter Nowell's residence without a warrant. Based on the totality of the circumstances, evidence the parties were going to destroy the amount of marijuana required for one "joint" from the approximately fifty pounds of marijuana present in the residence is not an exigent circumstance. Thus, because exigent circumstances did not exist to enter Nowell's residence without a warrant, the entry into Nowell's residence violated the Fourth Amendment of the United States Constitution.[1]

---

1. In its order denying Nowell's motion to suppress, the trial court did not make any findings regarding the warrantless entry into Nowell's residence. Rather, the trial court addressed only the arrest of Nowell, made after law enforcement officers had entered the residence, and Nowell's subsequent consent to law enforcement officers' request to search the residence. Generally, review of a trial court's denial of a motion to suppress is limited to "whether the trial court's findings of fact are supported by competent evidence and whether the findings of fact in turn support legally correct conclusions of law." *Smith*, 118 N.C. App. at 111, 454 S.E.2d at 683. Nevertheless, because the evidence regarding the entry of law enforcement officers into Nowell's residence is not controverted, we need not remand this case to the trial court for the entry of an order containing findings of fact. *See State v. Lovin*, 339 N.C. 695, 706, 454 S.E.2d 229, 235 (1995) (trial court's failure to make findings of fact at suppression hearing is not reversible error when there is not a material conflict in the evidence).

STATE v. NOWELL

[144 N.C. App. 636 (2001)]

*Exclusion of evidence*

Under the exclusionary rule, evidence seized pursuant to an unlawful search may not be admitted into evidence. *State v. Wallace*, 111 N.C. App. 581, 589, 433 S.E.2d 238, 243, *disc. review denied*, 335 N.C. 242, 439 S.E.2d 161 (1993). Thus, in this case, testimony by law enforcement officers regarding the location and condition of marijuana inside Nowell's residence, as well as the location of money inside the residence, should have been suppressed. Furthermore, although the trial court concluded at the suppression hearing that Nowell consented to the search of his residence, this consent occurred moments after law enforcement officers had made an illegal entry into the residence. Thus, Nowell's consent is tainted by the illegal entry into the residence and the drug paraphernalia seized as a result of the search should have been suppressed. *See Yananokwiak*, 65 N.C. App. at 518, 309 S.E.2d at 564 (evidence obtained after the defendant signed a consent form permitting police to search his house must be suppressed when the consent form was signed approximately five minutes after police made an illegal entry into the defendant's house). Accordingly, the trial court's order denying Nowell's motion to suppress testimony and evidence obtained as a result of the unlawful search of his residence is reversed. Additionally, the trial court's 8 December 1999 judgments as to Nowell are reversed and this case is remanded to the trial court for a new trial.[2] *See State v. Allen*, 332 N.C. 123, 129, 418 S.E.2d 225, 229 (1992) (case remanded to trial court for new trial when trial court erred by denying the defendant's motion to suppress evidence).

Because we reverse the trial court's 8 December 1999 judgments as to Nowell, we need not address Nowell's additional assignments of error.

---

2. The State argues in its brief to this Court, pursuant to the inevitable discovery exception to the exclusionary rule, that evidence Nowell's residence contained marijuana should not be suppressed because "officers knew of the existence of the marijuana in the residence even before they entered the residence." *See State v. Garner*, 331 N.C. 491, 502, 417 S.E.2d 502, 507-08 (1992) (discussing inevitable discovery exception to the exclusionary rule). The State, however, did not raise this theory of admissibility at the suppression hearing; thus, the State has abandoned this theory of admissibility and we do not address it. *See Cooke*, 306 N.C. at 136-37, 291 S.E.2d at 621 (appellate court will not address theory of admissibility not raised in trial court). Additionally, we note that Nowell sought to suppress not only the marijuana seized as a result of the unlawful entry into his residence, but also testimony of law enforcement officers based on the unlawful entry. Thus, even assuming the presence of marijuana in the residence was admissible under the inevitable discovery exception, the testimony of law enforcement officers based on the unlawful entry would nevertheless have to be suppressed.

STATE v. NOWELL

[144 N.C. App. 636 (2001)]

II

Taylor

[2] Taylor argues the record does not contain substantial evidence he possessed marijuana; therefore, the trial court should have granted his motion to dismiss the charges against him. We agree.[3]

A motion to dismiss is properly denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).

Possession is an element of both trafficking in marijuana, pursuant to N.C. Gen. Stat. § 90-95(h)(1), and possessing marijuana with the intent to sell or deliver, pursuant to N.C. Gen. Stat. § 90-95(a). N.C.G.S. § 90-95(a) (1999); *State v. Moose*, 101 N.C. App. 59, 65, 398 S.E.2d 898, 901 (1990), *disc. review denied*, 328 N.C. 575, 403 S.E.2d 519 (1991). A defendant possesses marijuana within the meaning of section 90-95 when he has "both the power and intent to control its disposition or use." *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972).

In this case, the State presented evidence Strickland brought approximately fifty pounds of marijuana into Nowell's residence and Taylor subsequently arrived at the residence. Taylor then placed an amount of money on the kitchen counter, and either Taylor or Nowell "cut open" a brick of marijuana. Taylor then stated he "was going to smoke [some of the marijuana]." Immediately after Taylor made this statement, law enforcement officers entered Nowell's residence and observed Taylor and Nowell behind the kitchen counter. The kitchen counter contained a "brick" of marijuana, some "marijuana residue," a razor, and a "large amount of cash"; and Strickland was standing "a

---

3. We note that evidence admitted at trial that should have been suppressed pursuant to Nowell's motion to suppress may not have been admissible against Taylor because Taylor and Nowell were tried jointly. Nevertheless, Taylor does not address this issue in his brief to this Court and we, therefore, do not reach this issue.

foot away from the kitchen counter." This evidence, viewed in the light most favorable to the State, does not show Taylor had both the power and intent to control the marijuana located in Nowell's residence at the time law enforcement offers entered the residence. *See State v. Wheeler*, 138 N.C. App. 163, 165, 530 S.E.2d 311, 312-13 (2000) (handling of drugs "for inspection purposes does not constitute possession within the meaning of section 90-95(h)(3)"); *Moose*, 101 N.C. App. at 65, 398 S.E.2d at 901 (party who placed finger in cocaine and touched the substance to his lip did not have the power and intent to control the substance). The record, therefore, does not contain substantial evidence Taylor possessed marijuana and the trial court consequently erred by denying Taylor's motion to dismiss the charges against him. Accordingly, the trial court's 8 December 1999 judgments as to Taylor are reversed. Because we reverse these judgments, we need not address Taylor's additional assignments of error.

Case Nos. 99CRS001922; 99CRS001923; 99CRS001924; 99CRS001925: Reversed and remanded.

Case Nos. 99CRS001926; 99CRS001928: Reversed.

Judge TIMMONS-GOODSON concurs.

Judge JOHN concurs in part and dissents in part with a separate opinion.

JOHN, J., concurring in part and dissenting in part.

I agree with the majority as to its disposition of the cases against defendant Michael Lynn Taylor and therefore concur in the reversal of cases 99 CRS 001926 and 001928. However, I am unable to join in the reversal of the trial court's denial of defendant Gregory Lee Nowell's motion to suppress. Accordingly, I respectfully dissent in cases 99 CRS 001922-25.

Citing no authority in support thereof, the majority herein announces a new "de minimis" exception to the exigent circumstances exception to the general constitutional requirement that a search warrant be obtained prior to execution of a search by law enforcement officers. However, the majority concedes that courts nationwide have recognized "the probable destruction or disappearance of a controlled substance" as an exigent circum-

STATE v. NOWELL

[144 N.C. App. 636 (2001)]

stance excusing the necessity of obtaining a search warrant. *See U.S. v. Sangineto-Miranda,* 859 F.2d 1501, 1511 (6th Cir. 1988) ("[t]his court has recognized along with many others that exigent circumstances will be present when there is an urgent need to prevent evidence from being lost or destroyed"). Indeed, "the possibility of destruction of evidence" constitutes one of " 'the most common and compelling bases that establish[es] exigency." *U.S. v. Kennedy,* 32 F.3d 876, 882 (4th Cir. 1994) (citation omitted), *cert. denied,* 513 U.S. 1128, 130 L. Ed. 2d 883 (1995); *see also State v. Hughes,* 233 Wis. 2d 280, 293, 607 N.W. 2d 621, 628 ("[m]arijuana and other drugs are highly destructible"), *cert. denied,* —— U.S. ——, 148 L. Ed. 2d 90 (2000).

In the case *sub judice,* the majority recites uncontroverted testimony that "Taylor and Nowell asked for rolling papers so that they could 'smoke a joint.' " Law enforcement officers thereupon entered Nowell's residence and the latter was observed "standing behind a brick of marijuana" and "trying to peel it open." Although "concrete proof" that evidence was "on the verge of [being] destroy[ed]," *U.S. v. Grissett,* 925 F.2d 776, 778 (4th Cir. 1991), *cert. denied,* 500 U.S. 945, 114 L. Ed. 2d 486 (1991), is not required, the destruction of evidence under the instant circumstances was indisputably imminent, *see Sangineto-Miranda,* 859 F.2d at 1512 (warrantless entry to prevent loss or destruction of evidence justified if prosecution demonstrates: "1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that [] the destruction of evidence is [imminent]").

Nonetheless, the majority imposes upon law enforcement officers and our already over-burdened trial courts the new requirement of factoring the probability of destruction of all, some, or only a small portion of the evidence, into the decision as to whether exigent circumstances may reasonably be considered to be present. *See id.* ("inquiry focuses on what an objective officer could reasonably believe"). Under the majority's novel test, North Carolina courts and police, in attempting to make exigent circumstances determinations, must now climb the slippery slope of hair-splitting assessments of both the quantity and indeed the quality of evidence subject to probable destruction or disappearance.

In *U.S. v. Rivera,* 248 F.3d 677 (7th Cir. 2001), a case involving approximately fourteen hundred pounds of marijuana, the Seventh Circuit rejected a similar approach as follows:

Essentially, [defendant] asks us to adopt a rule that exigent circumstances do not exist until a substantial portion of the evidence is in danger of being removed or destroyed. We decline that invitation. First, it is a completely unworkable standard. In determining whether exigent circumstances exist, we analyze the situation from the perspective of the officers at the scene [], and it is virtually impossible for officers to make the type of proportionality analysis recommended by [defendant]. Officers should not have to engage in a guessing game as to how much evidence has been removed or how much remains, before they can bring depletion to a halt. Moreover, even the destruction or removal of a relatively small amount of evidence can have significant consequences at sentencing, where the drug quantity impacts the sentence,

. . . .

If we were to define exigent circumstances as requiring that a certain quantum of evidence is in danger of destruction or removal—a magic number that must be reached before they can end the depletion—we would be imposing an unworkable standard on law enforcement officers who must make quick decisions at the site.

*Id.* at 681 (citation omitted).

I agree with the majority's statement in footnote 1 that the "evidence regarding the entry of law enforcement officers into Nowell's residence is uncontroverted," and its determination that remand for findings of fact is unnecessary. *See State v. Lovin,* 339 N.C. 695, 705-06, 454 S.E.2d 229, 235 (1995). Rather, based upon the uncontroverted evidence regarding the warrantless entry into Nowell's residence and for the reasons stated above, I vote no error in cases 99CRS 1922-25.