IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-135

No. COA20-548

Filed 1 March 2022

McDowell County, No. 18 CRS 50817-18

STATE OF NORTH CAROLINA

v.

JOANNA KAYE JULIUS

Appeal by defendant from judgments entered 17 April 2019 by Judge J. Thomas Davis in McDowell County Superior Court. Heard in the Court of Appeals 5 October 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General William Walton, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Hannah Hall Love, for defendant-appellant.*

TYSON, Judge.

¶ 1      Joanna Kaye Julius ("Defendant") appeals her convictions of trafficking in methamphetamine by possession and possession of methamphetamine with the intent to sell or deliver. We find no error.

## I.    Background

¶ 2      McDowell County Sheriff's Deputy Jesse Hicks ("Deputy Hicks") and State Highway Patrol Trooper Justin Sanders ("Trooper Sanders") responded to a single-

car accident on Tom's Creek Road on 20 May 2018. At the time of the crash, Defendant was the passenger and her acquaintance, Kyle, was driving the vehicle with Defendant's permission. The silver Suzuki SUV was owned by Defendant's parents, and had come to rest in a drainage ditch on the side of the road, with the driver's side partially submerged in water.

¶ 3        At least three witnesses at the site of the accident told the officers the driver had fled the scene and walked into nearby woods because of having outstanding warrants. Defendant stood alone, away from those gathered on the side of the road, with a pink backpack on the ground next to her. She provided Trooper Sanders with her identification from the wallet inside her pink backpack. Defendant also told Trooper Sanders the driver, a man she knew as Kyle, had fled the scene. Defendant claimed not to know Kyle's full or last name.

¶ 4        Trooper Sanders searched the SUV to "look[ ] for Kyle's driver's license or ID." He entered the car through the passenger side and found a black and green Nike bag on the passenger side floorboard. Inside the Nike bag, Trooper Sanders discovered a black box. Inside the box were two cell phones, a scale, and two large bags of a clear crystal-like substance, which was later determined to be 40.83 grams of methamphetamine.

¶ 5        Officers placed Defendant into custody after locating the substances inside of the vehicle. The officers searched her pink backpack. Inside of Defendant's backpack,

the officers found a glass smoking pipe, five cell phones, a handgun, a notebook, $1,785 in cash, and a clear container holding several bags of a white crystal-like substance, one of which contained one tenth of an ounce of methamphetamine.

¶ 6        Defense counsel filed a pretrial motion to suppress the evidence found in the black and green Nike bag and the pink backpack, alleging the search of the vehicle violated Defendant's Fourth Amendment protection from unreasonable searches and seizures.

¶ 7        During a hearing on 5 March 2019, Trooper Sanders testified he had searched the vehicle to locate the driver's identification in order to investigate the motor vehicle collision and a potential hit-and-run. The alleged driver, Kyle, had left the scene of a car accident after causing property damage. The trial court concluded the warrantless search was constitutional because Trooper Sanders had probable cause to search the SUV and denied Defendant's motion.

¶ 8        Defendant was indicted for two counts of possession of methamphetamine, possession of drug paraphernalia, two counts of trafficking methamphetamine, possession with intent to sell and deliver a Schedule II controlled substance, and failure to appear.

¶ 9        Defendant's trial began on 15 April 2019. Defendant pled guilty to possession of methamphetamine. Pursuant to her plea, the State agreed to consolidate the conviction of possession of methamphetamine with Defendant's conviction of

possession with intent to sell and deliver methamphetamine in 18 CRS 50818 and dismiss the charges of possession of drug paraphernalia and failure to appear.

¶ 10     Defendant was convicted of trafficking in methamphetamine by possession by a jury's verdict and sentenced to the mandatory minimum of 70 to maximum 93 months imprisonment. The court consolidated Defendant's convictions of possession with intent to sell and deliver and possession of methamphetamine for judgment, and imposed a sentence of 6-17 months in prison that was suspended for 30 months of supervised probation, to commence upon Defendant's release from prison. Defendant appealed.

## II.     Jurisdiction

¶ 11     Appellate jurisdiction is proper pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III.     Issues

¶ 12     Defendant contends the trial court: (1) erred in denying her motion to suppress evidence found in a warrantless search of her parents' vehicle without sufficient probable cause; and, (2) plainly erred by failing to provide an additional instruction about her actual knowledge of the drugs found inside the vehicle.

## IV.     Standard of Review

> In examining the case before us, our review is limited. It is the trial judge's responsibility to make findings of fact that are supported by the evidence, and then to derive conclusions of law based on those findings of fact. Where

the evidence presented supports the trial judge's findings of fact, these findings are binding on appeal. . . . The trial court's conclusions of law, however, are fully reviewable on appeal.

*State v. Hughes*, 353 N.C. 200, 207–08, 539 S.E.2d 625, 630–31 (2000).

## V.    Defendant's Motion to Suppress

¶ 13        It is well established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions." *State v. Fizovic*, 240 N.C. App. 448, 452, 770 S.E.2d 717, 720 (2015) (citations omitted).

> [W]here a search of a suspect's person occurs before instead of after formal arrest, such search can be equally justified as "incident to the arrest" provided probable cause to arrest existed prior to the search and it is clear that the evidence seized was in no way necessary to establish the probable cause. If an officer has probable cause to arrest a suspect and as incident to that arrest would be entitled to make a reasonable search of his person, we see no value in a rule which invalidates the search merely because it precedes actual arrest. The justification for the search incident to arrest is the need for immediate action to protect the arresting officer from the use of weapons and to prevent destruction of evidence of the crime.

*State v. Wooten*, 34 N.C. App. 85, 89–90, 237 S.E.2d 301, 305 (1977) (citation and quotation marks omitted).

¶ 14        The same reasoning in *Wooten* applies to the search of Defendant's parents'

vehicle involved in the accident and subsequently of her person and backpack. Our Supreme Court held, "when investigators have a reasonable and articulable basis to believe that evidence of the offense of arrest might be found in a suspect's vehicle after the occupants have been removed and secured, the investigators are permitted to conduct a search of that vehicle." *State v. Mbacke*, 365 N.C. 403, 409-10, 721 S.E.2d 218, 222 (2012).

¶ 15 Defendant challenges the following conclusion of law: "Trooper J.L. Sanders did not know . . . the true identity of the suspect, the cause of the collision, the extent of any damage caused by the collision, or the reason the alleged perpetrator had fled, if any. The answer to those inquiries lay within the vehicle driven by Kyle Lytle."

¶ 16 Here, the evidence and findings show officers received a dispatch call and responded to the scene of a vehicle accident. Defendant told officers the vehicle belonged to her parents, she was a passenger in the car at the time of the accident, and she had allowed Kyle to drive the SUV. Defendant stated she did not know "Kyle's full name."

¶ 17 Officers on the scene were told the purported driver of the vehicle had fled from the scene because he had pending active arrest warrants. Defendant claimed she was not driving the vehicle at the time of the accident. Defendant could not tell officers if the purported driver had taken his driver's license or other identification with him. Trooper Saunders' search of the vehicle was limited to plain view areas and

containers in which the alleged driver's identification could have reasonably been located.

¶ 18        Officers had reasonable suspicion to search the vehicle to verify the claims of another occupant and custodian of the vehicle to determine that alleged driver's identity.   Kyle's true identity was unknown at the time of the search. Kyle's identification may not have been inside the vehicle, but there was no other way for the officers to try to find information to identify the driver if the passengers and other witnesses did not know or would not provide his full name.  The identification of the purported driver may have reasonably been determined from looking inside the wrecked vehicle.

¶ 19        It is not disputed, and evidence supports the trial court's finding that the officers did not know the "true identity" of the purported driver, the cause of the collision, the extent of the damage caused by the collision, or the reason the driver had fled.   Presuming the last sentence of the conclusion: "The answer to those inquiries lay within the vehicle" is overstated, the officers were trying to identify the driver, who had fled from the scene of the accident, which itself is a crime, and who reportedly had outstanding warrants for other crimes. Defendant providing the name "Kyle" did not identify the driver. As it turned out, "Kyle" was middle name of the driver.

¶ 20        In either event, the officers were justified in searching the wrecked vehicle to

get it out of the ditch for an inventory or for officer safety. Officers searched the vehicle in an effort to find the purported driver's name or some means of identification. Once they discovered the black and green Nike bag containing drug-like substances and multiple cell phones was discovered, the officer testified "the nature of the investigation changed." The trial court properly denied Defendant's motion to suppress. *Mbacke*, 365 N.C. at 409-10, 721 S.E.2d at 222.

## VI.   Jury Instructions

¶ 21        Defendant failed to object to the jury instructions at trial and is limited only to appellate review for plain error. "[T]o rise to the level of plain error, the error in the instructions must be so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Barton*, 335 N.C. 696, 702, 441 S.E.2d 295, 298 (1994) (citation and internal quotation marks omitted).

¶ 22        "A jury instruction must be evaluated as a whole. If the entire instruction is an accurate statement of the law, one isolated piece that might be considered improper or wrong on its own will not be found sufficient to support reversal." *State v. Roache,* 358 N.C. 243, 311, 595 S.E.2d 381, 424 (2004).

¶ 23        Defendant argues the court failed to instruct on the knowledge element of the illegal drug charges. The jury was instructed that the State must prove Defendant "knowingly" possessed methamphetamine. The trial court adequately advised the jury of the knowledge requirement by stating, "[a] person possesses

methamphetamine if the person is aware of its presence . . . and intent to control the disposition or use of that substance."

¶ 24     In totality, the jury was sufficiently instructed the State had to prove beyond a reasonable doubt that Defendant knowingly possessed methamphetamine, and Defendant could not be convicted if she lacked knowledge of the methamphetamine found inside of her parent's vehicle. *Roache,* 358 N.C. at 311, 595 S.E.2d at 424. The trial court properly instructed the jury that the State had to prove beyond a reasonable doubt that Defendant knowingly possessed methamphetamine. Defendant's argument is overruled.

## VII.   Conclusion

¶ 25     The trial court properly denied Defendant's motion to suppress. Officers had reasonable suspicion to search the vehicle involved in an accident to find the identification of the purported driver and, from the contents of black and green Nike bag, developed probable cause to search Defendant's person and backpack. The trial court's instructions to the jury adequately explained the knowledge element and requirement of the possession of methamphetamines charge. Defendant received a fair trial free from prejudicial errors. We affirm the findings and conclusions as noted to deny Defendant's motion to suppress and find no error in the jury's verdict or in the judgment entered thereon. *It is so ordered.*

     NO ERROR.

Chief Judge STROUD concurs.

Judge INMAN dissents in part and concurs in the result only in part with separate opinion.

INMAN, Judge, dissenting in part; concurring in result only in part.

Because the evidence and argument presented to the trial court did not establish probable cause for the warrantless search of Defendant's parent's vehicle, I respectfully dissent from the majority's decision affirming the trial court's denial of Defendant's motion to suppress. I concur in the majority's mandate denying Defendant relief related to the trial court's failure to give the requested jury instruction, but for a different reason, as explained below.

## I. FACTUAL & PROCEDURAL BACKGROUND

The majority opinion omits the following facts relevant to Trooper Sanders' search of the vehicle:

In addition to telling officers that the driver of the vehicle had fled the scene on foot, witnesses described the driver as a white male with short hair and a facial tattoo. Deputy Hicks was familiar with a man named Kyle, later determined to be William Kyle Lytle ("Mr. Lytle"), matching the description of the driver.

After learning that the driver had fled but before learning the driver's last name, Trooper Sanders searched the vehicle without Defendant's consent, specifically "looking for Kyle's driver's license or ID." Neither the black and green Nike bag nor the black box discovered during the search of the vehicle contained any identification.

## II. ANALYSIS

### A. *Motion to Suppress Evidence Obtained by Warrantless Search of Vehicle*

We review a motion to suppress to determine "whether competent evidence

supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Malone*, 373 N.C. 134, 145, 833 S.E.2d 779, 786 (2019) (citation omitted). The trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. *Id.* at 145, 833 S.E.2d at 786. Findings of fact not challenged on appeal are binding. *State v. Lupek*, 214 N.C. App. 146, 150, 712 S.E.2d 915, 918 (2011). We review the trial court's conclusions of law *de novo*. *Malone*, 373 N.C. at 145, 833 S.E.2d at 786 (citation omitted).

¶ 31        The Fourth Amendment protects all persons from "unreasonable searches and seizures," U.S. Const. amend. IV, subject to only a few clearly designated exceptions, *Mincey v. Arizona*, 437 U.S. 385, 390, 57 L. Ed. 2d 290, 298 (1978). To overcome a defendant's motion to suppress evidence, the State bears the burden of demonstrating "how the [warrantless search] was exempted from the general constitutional demand for a warrant." *State v. Nowell*, 144 N.C. App. 636, 642, 550 S.E.2d 807, 812 (2001) (brackets in original) (citation omitted).

¶ 32        Here, the trial court concluded the search of the vehicle was constitutional based on the following reasoning:

> During his investigation of this collision, Trooper J.L. Sanders was provided with the first name and physical characteristics of the alleged perpetrator of a hit and run. He became aware that someone with the first name 'Kyle' had been operating a silver Suzuki SUV involved in a

collision and that this man had fled the scene on foot. He learned that the man was concerned about having unserved warrants. In speaking with each of the eyewitnesses, Trooper J.L. Sanders and Deputy Jesse Hicks were able to determine it was possible that the crime of hit and run had been committed and that the person responsible was fleeing into the woods. Trooper J.L. Sanders did not know, however, the true identity of the driver, the cause of the collision, the extent of any damage caused by the collision, or the reason the alleged perpetrator fled, if any. The answer to those inquiries lay within the vehicle. It was reasonable for [Trooper] J.L. Sanders to conclude that the vehicle may contain evidence of the true identity of the driver, the cause of the collision, and/or the reason for the driver fleeing the scene, and he therefore had probable cause to search the vehicle for that evidence . . . . As a result, Trooper J.L. Sanders had legal authority to search the vehicle and every place within the vehicle where any form of identification for Kyle Lytle could be found. Trooper J.L. Sanders' subsequent search of the black and green Nike bag and the black box inside it were therefore constitutional searches.

¶ 33    While there may have been probable cause to justify the issuance of a warrant by a magistrate, no exception to the warrant requirement authorized the warrantless search of the vehicle on the scene of the single-car accident in this case. Even if it was reasonable to believe that Kyle's identification would be in the car to corroborate witnesses' testimony that he was the driver and that he had subsequently committed the crime of hit and run by leaving the scene of the accident, the warrant requirement protection may not be usurped absent some exception. *See State v. Fizovic*, 240 N.C. App. 448, 452, 770 S.E.2d 717, 720 (2015) ("Searches conducted outside the judicial

process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.").

### 1. *Search Incident to Arrest Exception*

¶ 34    The majority relies on the State's argument that the search of the vehicle was incident to Mr. Lytle's arrest and therefore authorized without a warrant, but Mr. Lytle was not arrested anywhere near the vehicle, and he was not arrested at the time of the search.

¶ 35    Police may "search a vehicle *incident to a recent occupant's arrest* only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Fizovic*, 240 N.C. App. at 452, 770 S.E.2d at 720 (citing *Arizona v. Gant*, 556 U.S. 332, 351, 173 L. Ed. 2d 485, 501 (2009)) (emphasis added).

¶ 36    The search of the vehicle fails an essential threshold requirement of the search incident to arrest exception—the arrest of a recent occupant of the vehicle. Trooper Sanders testified that at the time of the warrantless search of the vehicle, the person officers intended to arrest in connection with the accident, the driver, Kyle, was not on the scene and his whereabouts were unknown. The officers' authority to arrest Mr. Lytle once they found him "does not necessarily include the authority to search a motor vehicle in the absence of probable cause." *State v. Braxton,* 90 N.C. App. 204,

208, 368 S.E.2d 56, 59 (1988).

¶ 37      For a search incident to arrest based on an outstanding warrant, "it is highly unlikely that [evidence relevant to the crime of arrest] would exist to permit a search of a vehicle, unless incriminating facts concerning the offense charged in the warrant exist at the arrest scene."  Robert L. Farb, *Arrest, Search, and Investigation in North Carolina* 250-52 (UNC Sch. of Gov't, 5th ed. 2016) (citing *United States v. Hinson*, 585 F.3d 1328, 1334-35 (10th Cir. 2009) (applying *Gant*)).  Because Mr. Lytle was not present on the scene at the time of the search, there was no arrest to justify, even retroactively, the warrantless search of the vehicle.  *Cf. State v. Fisher*, 141 N.C. App. 448, 456, 539 S.E.2d 677, 683 (2000) ("Because [the] defendant was never arrested, the search of his vehicle was not justified as a search incident to a lawful arrest. Furthermore, in accordance with *Knowles*, the officers were not justified in searching [the] defendant's car based upon the issuance of the citation.  This is true even though the officers may have had probable cause to arrest [the] defendant.").

¶ 38      The majority relies on *State v. Wooten*, 34 N.C. App. 85, 237 S.E.2d 301 (1977), to justify the warrantless search at issue in this case.  In *Wooten*, this Court reasoned:

> [W]here a search of a suspect's person occurs before instead of after formal arrest, such search can be equally justified as 'incident to the arrest' provided probable cause to arrest existed prior to the search and it is clear that the evidence seized was in no way necessary to establish the probable cause.

*Id.* at 89, 237 S.E.2d at 305. Contrary to the majority's summary of the evidence, officers did not testify that they suspected Defendant had been driving the vehicle at the time of the collision. Witnesses told police unequivocally Kyle had been driving the vehicle. Further, there was no probable cause to search or arrest Defendant; even if she were the driver, she remained with the vehicle after the accident. *See* N.C. Gen. Stat. § 20-166 (2021) ("Duty to stop in event of a crash."). The search of the vehicle could not be justified as incident to *Defendant*'s arrest because, as the majority concedes, the illegal drugs and paraphernalia seized from the search of the vehicle singularly established the probable cause to arrest and search Defendant and her belongings. *See Wooten*, 34 N.C. App. at 89, 237 S.E.2d at 305. Police did not form the intent to arrest Defendant until after finding contraband in the vehicle through the warrantless search.

### 2. *Other Exceptions to Warrant Requirement*

¶ 39      Nor was the search of the vehicle authorized under the automobile exception to the warrant requirement, as the State contends.

¶ 40      "A search of a motor vehicle which is on a public roadway or in a public vehicular area is not in violation of the fourth amendment if it is based on probable cause, even though a warrant has not been obtained." *State v. Isleib*, 319 N.C. 634, 638, 356 S.E.2d 573, 576 (1987) (citing *United States v. Ross,* 456 U.S. 798, 809, 72 L. Ed. 2d 572, 584 (1982)). "Probable cause requires that the existing facts and

circumstances be sufficient to support a fair probability or reasonable belief that contraband will be found in the automobile." *State v. Corpening*, 109 N.C. App. 586, 589, 427 S.E.2d 892, 894 (1993) (citing *State v. Simmons,* 278 N.C. 468, 180 S.E.2d 97 (1971); *State v. Ford,* 70 N.C. App. 244, 318 S.E.2d 914 (1984)). The automobile exception exists because "the inherent mobility of motor vehicles" creates the risk that evidence of criminal activity will be removed from the scene before officers have time to obtain a search warrant. *Isleib*, 319 N.C. at 637, 356 S.E.2d at 576; *see also Collins v. Virginia*, 138 S. Ct. 1663, 1669, 201 L. Ed. 2d 9, 18 (2018) ("The 'ready mobility' of vehicles served as the core justification for the automobile exception for many years." (citations omitted)). In this case, as the majority acknowledges, the vehicle was in a ditch and inoperable, negating the automobile exception's purpose.

¶ 41 The other theories offered by the majority to justify the warrantless search of the vehicle—officer safety, an inventory search, or search for other people—are nowhere to be found in the evidence, the officers' testimony at the motion to suppress hearing, in the trial court's findings on the motion to suppress, or in the State's arguments presented on appeal. It is not within the province of this Court to create the probable cause which might have existed to justify the warrantless search of the vehicle; that burden falls squarely on the State to present evidence to the trial court. *See Nowell*, 144 N.C. App. at 642, 550 S.E.2d at 812. I would hold that the warrantless search of the vehicle was unconstitutional.

### *3. Fruit of the Poisonous Tree*

Because the warrantless search of the vehicle was unconstitutional, the evidence discovered in the black and green Nike bag should be suppressed under the exclusionary rule. *See State v. Jackson*, 199 N.C. App. 236, 244, 681 S.E.2d 492, 498 (2009); *see also Wong Sun v. United States*, 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455 (1963) (holding evidence that is the "fruit" of an illegal search is inadmissible).

As the trial court concluded, "[t]he discovery of what appeared to be methamphetamine and drug paraphernalia inside of the black and green Nike bag found in the passenger floorboard provided [the officers] with probable cause to arrest [Defendant] and search her pink backpack." Because the probable cause to arrest Defendant and search her pink backpack arose only from the illegal search of the vehicle, the evidence seized from Defendant's backpack also should have been excluded as "fruit of the poisonous tree." *See Jackson*, 199 N.C. App. at 243-44, 681 S.E.2d at 497-98.

I would reverse the trial court's order denying Defendant's motion to suppress, vacate Defendant's convictions, and remand for a new trial.

### *B. Additional Jury Instruction*

I concur in the majority's denial of relief to Defendant based on the trial court's failure to instruct the jury on additional pattern jury language after Defendant denied knowledge of the drugs in the black and green Nike bag. But unlike the

majority, which holds that the trial court did not err, I would conclude that Defendant has failed to demonstrate plain error.

¶ 46        "Failure to follow the pattern instructions does not automatically result in error." *State v. Bunch*, 363 N.C. 841, 846,689 S.E.2d 866, 870 (2010).  We will uphold instructions when, "viewed in their entirety, [the instructions] present the law fairly and accurately to the jury." *State v. Roache*, 358 N.C. 243, 304, 595 S.E.2d 381, 420 (2004).

¶ 47        Footnote 6 of the pattern jury instruction for drug trafficking provides: "If the defendant contends that the defendant did not know the true identity of what the defendant possessed, add this language to the first sentence: *'and the defendant knew that what the defendant possessed was (name substance).'"* N.C.P.I. Crim. 260.17 n.6 (2019) (emphasis added).

¶ 48        The supplemental instruction is derived from *State v. Boone*, 310 N.C. 284, 311 S.E.2d 552 (1984), *superseded by statute on other grounds as stated in State v. Oates,* 366 N.C. 264, 732 S.E.2d 571 (2012), in which our Supreme Court held

> the trial court erred in instructing the jury that defendant could be found guilty of possessing marijuana if he had reason to know that what he possessed was marijuana . . . . [T]he court should have instructed the jury that the defendant is guilty only in the event he knew the marijuana was in the trunk of his automobile and that if he was ignorant of that fact, and the jury should so find, they should return a verdict of not guilty.

*Id.* at 294, 311 S.E.2d at 559. Here, on the charge of drug trafficking by possession, the trial court instructed jurors, in relevant part, that they must determine whether the State proved beyond a reasonable doubt that "the defendant knowingly possessed methamphetamine. A person possesses methamphetamine if the person is aware of its presence and has, either by one's self or together with others, both the power and intent to control the disposition or use of that substance." The Supreme Court's holding in *Boone* and the additional jury instruction would have resulted in the jury being told in this case that "defendant knowingly possessed *the methamphetamine in the black bag and the defendant knew that what she possessed in the black bag was methamphetamine.*" (emphasis added).

¶ 49    Throughout the trial, Defendant denied knowledge of the contents of the black and green bag, which she testified Mr. Lytle had left in her car at the time of the accident before he fled the scene. She testified she never opened, touched, or saw what was in the bag. During closing argument, Defendant's counsel argued that even if Defendant knowingly possessed the methamphetamine contained in her pink backpack, she did not knowingly possess a trafficking amount of methamphetamine because she had no knowledge of what was in the black and green Nike bag. The State asserted in its closing arguments that Defendant was aware of the methamphetamine contained in the black and green bag and therefore was guilty of trafficking by possession.

¶ 50        Here, unlike in *Boone*, the trial court correctly instructed jurors on the standard of actual knowledge required for them to find Defendant guilty of possessing a controlled substance.    But in light of the evidence presented to support the trafficking charge, Defendant's knowledge of the contents of the black and green bag was a "determinative issue of fact" at trial, and she was still entitled to the additional jury instruction on that issue of fact.    *State v. Lopez*, 176 N.C. App. 538, 546, 626 S.E.2d 736, 742 (2006) (awarding the defendant a new trial because "[o]ur courts have previously awarded new trials for the failure to properly instruct the jury that a defendant was guilty only if he knew a package contained an illicit substance, when the defendant had presented evidence that he lacked knowledge of the true contents of the package.") (citing *Boone*, 310 N.C. at 295, 311 S.E.2d at 559)); *see also State v. Coleman*, 227 N.C. App. 354, 362, 742 S.E.2d 346, 352 (2013) ("[S]ubstantive evidence that defendant did not know that the substance he possessed was heroin was sufficient to . . . trigger the necessity to give the required additional instruction on guilty knowledge contained within [the pattern jury instructions].")    For these reasons, I would hold the trial court erred in failing to further instruct the jury about Defendant's knowledge as prescribed by our pattern jury instructions.    But given the ability of Defendant's trial counsel to present to jurors the argument that Defendant did not know the black and green Nike bag contained methamphetamine, and considering all other evidence of record, as well as the jury's sole province to assess

the credibility of all witnesses, I do not conclude that the error had a probable impact on the jury's verdict. *See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

### III.    CONCLUSION

Based on the reasons outlined above, I respectfully dissent from the majority's decision in part and concur in result only in part.