STATE v. WOODING

[117 N.C. App. 109 (1994)]

———————

STATE OF NORTH CAROLINA v. SHAWN KYLE WOODING

No. 9418SC44

(Filed 15 November 1994)

**Searches and Seizures § 14 (NCI4th)— officer looking through curtains on porch—unlawful search—consent to search tainted—evidence properly excluded**

In entering defendant's back porch, leaning over a couch, and looking through a crack in drawn curtains, a police officer violated defendant's right against unreasonable searches and seizures; furthermore, evidence seized from defendant's apartment must be excluded from evidence as the fruit of an illegal search, since defendant's consent to search was given after his unlawful arrest and was tainted by the officer's unlawful search.

**Am Jur 2d, Searches and Seizures §§ 36, 37.**

**Lawfulness of nonconsensual search and seizure without warrant, prior to arrest. 89 ALR2d 715.**

**Validity of consent to search given by one in custody of officers. 9 ALR3d 858.**

**Comment Note.—"Fruit of the poisonous tree" doctrine excluding evidence derived from information gained in illegal search. 43 ALR3d 385.**

Appeal by State from order entered 10 June 1993 in Guilford County Superior Court by Judge W. Steve Allen. Heard in the Court of Appeals 19 October 1994.

*Attorney General Michael F. Easley, by Associate Attorney General Michael S. Fox, for State-appellant.*

*Law Offices of R. Steve Bowden & Associates, by Bruce A. Lee, for defendant-appellee.*

GREENE, Judge.

The State, pursuant to N.C. Gen. Stat. § 15A-979(c), appeals from the trial court's pre-trial order granting defendant's motion to suppress evidence.

The evidence shows that on 22 August 1992, police officer D. N. Pleasants (Pleasants) received two police radio communications. The first radio communication was that a witness at the Southern Lights Restaurant in Greensboro had observed a black man in his 20's, stocky build and wearing a baseball cap, exit a 1980's gray Monte Carlo automobile and hide behind a dumpster near the restaurant. The witness indicated he thought the man lived in one of the apartments located at 109 North Cedar Street. While investigating the suspicious person call at the Southern Lights Restaurant, Pleasants received a second radio communication that there had been a robbery at the Equinox Restaurant in Greensboro. The description of the suspect at the Equinox Restaurant matched the description of the suspicious person at the Southern Lights Restaurant. In response to these broadcasts, Pleasants went to 109 North Cedar Street.

When Pleasants arrived at 109 North Cedar Street, he noticed a gray Monte Carlo parked in front of a building containing four apartments, two at ground level and two upstairs. Before exiting his police vehicle he saw, through an open window in the side of one of the downstairs apartments, a black male matching the earlier descriptions. After exiting the vehicle, he saw this same person, through the same open window, walking around in the apartment and "heard a lot of noise which appeared to [him] to be coins hitting metal." Pleasants testified that the noise was "definitely change being counted, or sifted through." Because his "suspicion" was aroused, Pleasants moved his patrol car to a more secluded area and radioed for another officer to bring the witness from the Equinox Restaurant to the apartment building.

Pleasants then went into the back yard of the apartment building and went onto the back porch of the apartment in which he had earlier observed the black male. To obtain entrance onto this back porch

STATE v. WOODING

[117 N.C. App. 109 (1994)]

he walked up a set of stairs, which is shared by the other lower level apartment and walked around a partition which separates the porches of the two lower level apartments. The back porch to the apartment in which the black male had been seen has one window, with a fan in the lower portion of the window and drawn curtains on the top portion of the window. There is also a door leading to the back porch. On 22 August 1992 there was a couch sitting in front of the door and beneath the window. There were also other miscellaneous items, for instance a bicycle, sitting on the porch.

Once on the porch, Pleasants leaned over the couch, getting "pretty close" to the window, and looked into the apartment through a three to four inch opening in the window curtains. Pleasants saw two black males sitting on the floor in the hallway counting money. Pleasants radioed the officer, who was waiting out front in a police vehicle with the witness from the Equinox Restaurant, and informed the officer what he had seen through the window. The witness heard this communication and was therefore made aware of what Pleasants had observed in the apartment. Pleasants also instructed the other several officers present at the apartment to secure the premises. Shortly thereafter, the defendant came out onto the front porch, was stopped by the officers, pursuant to Pleasants radio request, arrested for "suspicion of armed robbery," and placed in the patrol car. After the police knocked on the door of the apartment, the other person came outside. The witness identified the second person to come out of the apartment as the robber. Both men consented to a search of the apartment and the defendant's brother, whose name was on the lease, signed a written consent to search the apartment. Upon searching the premises, the police seized several items of evidence, including a handgun and some money.

---

The issues are (I) whether Pleasants' action in entering the back porch and looking through the window was an unlawful search under the Fourth Amendment of the United States Constitution or Article I, Section 20 of the North Carolina Constitution; and (II) if so, whether the items seized in a subsequent search of the apartment were seized as the consequence of an independent source, untainted by Pleasants' search.

I

Defendant argues that Pleasants, in looking into the back window of his apartment, conducted an unlawful search of the apartment. We agree.

Whenever a "person exhibits a subjective expectation of privacy in the object of the challenged search, and that expectation is one which society is prepared to recognize as reasonable," the Fourth Amendment of the United States Constitution and Article I, Section 20 of the North Carolina Constitution apply. *State v. Tarantino*, 322 N.C. 386, 390, 368 S.E.2d 588, 591 (1988), *cert. denied*, 489 U.S. 1010, 103 L. Ed. 2d 180 (1989); *see State v. Carter*, 322 N.C. 709, 712-13, 370 S.E.2d 553, 555 (1988). In this case, the defendant had a subjective expectation of privacy in the hallway of his apartment and this expectation was reasonable. There was a couch blocking the back door of the apartment and a fan and drawn curtain covering the back window. The back door and window adjoined a private porch. The police officer was able to see into the hallway of the apartment only after walking onto the porch, leaning over the couch and looking through the window. The fact that there was a three to four inch opening in the drawn curtains is "not the kind of exposure which serves to eliminate a reasonable expectation of privacy. To hold otherwise would result in an unfairly exacting standard." *Tarantino*, 322 N.C. at 390, 368 S.E.2d at 591 (Fourth Amendment applies even though barn had small cracks between boards in back wall); *see also California v. Ciraolo*, 476 U.S. 207, 213, 90 L. Ed. 2d 210, 216 (nexus between the outer area and the home, as well as measures taken to ensure privacy are factors in determining defendant's reasonable expectation of privacy), *reh'g denied*, 478 U.S. 1014, 92 L. Ed. 2d 728 (1986).

II

Because we have determined that the search was violative of the defendant's right against unreasonable searches and seizures, the evidence seized must be excluded from evidence, *Murray v. United States*, 487 U.S. 533, 536-37, 101 L. Ed. 2d 472, 480 (1988); *Carter*, 322 N.C. at 716, 370 S.E.2d at 557, unless it would nonetheless have been obtained "independently from lawful activities untainted by the initial illegality." *State v. Wallace*, 111 N.C. App. 581, 589, 433 S.E.2d 238, 243, *cert. denied*, 335 N.C. 242, 439 S.E.2d 161 (1993); *see also State v. Garner*, 331 N.C. 491, 502, 417 S.E.2d 502, 508 (1992) (discussing the inevitable discovery exception to the exclusionary rule).

The State argues that the search of the apartment occurred as a result of a consent to search given after the witness identified one of the persons in the apartment as the robber and is therefore independent of any illegality on the part of officer Pleasants. We disagree.

The defendant was the first person to leave the apartment and he was immediately arrested as a result of the request made by Pleasants after he had looked into the rear window. He was not arrested as a result of the identification by the eyewitness because she did not identify him at the apartment. She identified the other person in the apartment as the robber and he did not exit the apartment until after the defendant had been arrested. Thus the arrest of the defendant was based entirely on Pleasants' unlawful search and was therefore itself unlawful. *See State v. Joyner*, 301 N.C. 18, 21, 269 S.E.2d 125, 128 (1980). Likewise, the consent to search, given by defendant after his arrest, was tainted by the unlawful search. *See State v. Yananokwiak*, 65 N.C. App. 513, 518, 309 S.E.2d 560, 564 (1983) (defendant's consent after officers stormed his home and placed him under arrest was not independent of the unlawful entry). Furthermore, the identification by the witness of the second person in the apartment was made only after the witness had been made aware that Pleasants had seen, through the back window, two people in the apartment counting money. Thus this identification and subsequent consent to search were also tainted by the unlawful search. Accordingly, the trial court properly excluded the evidence seized from the defendant's apartment and the suppression order is

Affirmed.

Judges WYNN and JOHN concur.