Justice HUDSON
dissenting.
The State argues, and the majority agrees, that because the marijuana plants in defendant’s backyard were in “plain view,” their seizure was justified under the “plain view” doctrine. Because I conclude that this determination is based upon a mistaken assumption about how the doctrine applies when the view and seizure occur from outside a constitutionally protected area, a “pre-intrusion” scenario, I respectfully dissent.
As the Maryland intermediate appellate court has observed, “[njeedless confusion” has arisen out of the failure by courts to distinguish “visually similar but legally distinct situations” involving the observation of contraband: *766 Scales v. State, 13 Md. App. 474, 478 n.1, 284 A.2d 45, 47 n.1 (Md. Ct. Spec. App. 1971). After Coolidge it was not entirely clear whether the discovery of contraband had to be “inadvertent” to justify its warrantless seizure under the “plain view” doctrine. In Horton v. California, 496 U.S. 128, 130, 110 S. Ct. 2301, 2304 (1990), the Supreme Court of the United States clarified that “even though inadvertence is a characteristic of most legitimate ‘plain-view’ seizures, it is not a necessary condition.” However, as noted by the majority, our State statutes require that the discovery be inadvertent. N.C.G.S. § 15A-253 (2013) (stating that when a search is conducted via a warrant, an officer may also take possession of contraband that is “inadvertently discovered” although not specified in the warrant).
*765 The “plain view doctrine,” as described in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 [(1971)], refers exclusively to the legal justification — the reasonableness— for the seizure of evidence which has not beén particularly described in a warrant and which is inadvertently spotted in the course of a constitutional search already in progress or in the course of an otherwise justifiable intrusion into a constitutionally protected area. It has no applicability when the vantage point from which the “plain view” is made is not within a constitutionally protected area.
*766 In 1971 the Supreme Court further explained the contours of' what has come to be known as the “plain view” doctrine:
[P]lain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent ‘exigent circumstances.’ Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.
Coolidge v. New Hampshire, 403 U.S. 443, 468, 91 S. Ct. 2022, 2039 (1971) (second emphasis added) (citations omitted), abrogated in part by Horton, 496 U.S. 128, 1105 S. Ct. 2301. In other words,
“plain view” provides grounds for seizure of an item when an officer’s access to an object has some prior justification under the Fourth Amendment. “Plain view” is perhaps better understood, therefore, not as an independent “exception” to the Warrant Clause, but simply as an extension of whatever the prior justification for an officer’s “access to an object” may be.
Texas v. Brown, 460 U.S. 730, 738-39, 103 S. Ct. 1535, 1541 (1983) (plurality) (footnote omitted).
As the Florida Supreme Court explains in Ensor v. State, these visually similar situations fall into one of three categories for purposes of Fourth Amendment analysis:
*767 The term “plain view” has been misunderstood and misapplied because courts have made it applicable to three distinct factual situations. This has resulted in confusion of the elements of the “plain view doctrine.” To eliminate this confusion, we believe it appropriate to distinguish the true “plain view doctrine” as established in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), from other situations where officers observe contraband.
The first factual situation we identify as a “prior valid intrusion.” In this situation, an officer is legally inside, by warrant or warrant exception, a constitutionally protected area and inadvertently observes contraband also in the protected area. It is this situation for which the United States Supreme Court created the “plain view doctrine” in Goolidge and held that an officer could constitutionally seize the contraband in “plain view” from within this protected area. We emphasize that it is critical under this doctrine for the officer to be already within the constitutionally protected area when he inadvertently discovers the contraband.
We identify the second factual situation as a “non-intrusion.” This situation occurs when both the officer and the contraband are in a non-constitutionally protected area. Because no protected area is involved, the resulting seizure has no fourth amendment ramifications, and, while the contraband could be defined as in “plain view,” it should not be so labeled to prevent any confusion with the Goolidge “plain view doctrine.”
The third situation concerns a “pre-intrusion.” Here, the officer is located outside of a constitutionally protected area and is looking inside that area. If the officer observes contraband in this situation, it only furnishes him probable cause to seize the item. He must either obtain a warrant or have some exception to the warrant requirement before he may enter the protected area and seize the contraband. As with the non-intrusion situation, the term “plain view” should not be employed here to prevent confusion. For clarity, we label an observation in the latter two non-Coolidge situations as a legally permissive “open view.”
403 So. 2d 349, 352 (Fla. 1981), superseded on other grounds by statute, Fla. Stat. § 790.25(5) (Supp. 1982). These distinctions come from the limits to the plain view doctrine, as explained by the Supreme Court in Texas v. Brown. While the majority believes that this case falls within the first category of cases described in Ensor, I *768 believe it falls within the third. Consequently, the majority analyzes the constitutionality of the seizure of the contraband in this case under the “plain view” doctrine, while I analyze it as a “pre-intrusion” case.
Essentially, I do not agree with the majority that simply because the officers were lawfully on the front porch, they could move to what the State has identified as defendant’s “backyard” and “behind the residence.” I do not dispute that the officers here had every right to be on the front (or, in this case, side) porch to conduct a “knock and talk” investigation. See State v. Lupek, 214 N.C. App. 146, 151, 712 S.E.2d 915, 919 (2011) (“In North Carolina, however, no search of the curtilage occurs when an officer is in a place where the public is allowed to be, such as at the front door of a house. It is well established that ‘[e]ntrance [by law enforcement officers] onto private property for the purpose of a general inquiry or interview is proper.’ ” (alterations in original) (quoting State v. Prevette, 43 N.C. App. 450, 455, 259 S.E.2d 595, 599-600 (1979), appeal dismissed and disc. rev. denied, 299 N.C. 124, 261 S.E.2d 925, cert. denied, 447 U.S. 906, 100 S. Ct. 2988 (1980))). The front porch', however, is very different from the backyard and the rest of the curtilage. The Supreme Court has repeatedly emphasized the high privacy interest individuals hold in the curtilage. See, e.g., United States v. Dunn, 480 U.S. 294, 300, 107 S. Ct. 1134, 1139 (1987) (recognizing “that the Fourth Amendment protects the curtilage of a house”); United States v. Martinez-Fuerte, 428 U.S. 543, 561, 96 S. Ct. 3074, 3084 (1976) (noting that the “sanctity of private dwellings” is “afforded the most stringent Fourth Amendment protection”). Further, as noted by the majority, this Court has specifically defined the curtilage to include areas identical to where the contraband was observed in this case: “[T]he curtilage of the home will ordinarily be construed to include at least the yard around the dwelling house as well as the area occupied by barns, cribs, and other outbuildings.” State v. Frizzelle, 243 N.C. 49, 51, 89 S.E.2d 725, 726 (1955) (citations omitted). Therefore, although the officers here were lawfully on the porch that served as the main entrance to the house, they had no right to enter other portions of defendant’s curtilage. Defendant’s “backyard,” located “behind the residence,” is still “afforded the most stringent Fourth Amendment protection.” Martinez-Fuerte, 428 U.S. at 561, 96 S. Ct. at 3084.
Because the officers were outside the protected area, I conclude that the Fourth Amendment requires either (1) a warrant or (2) probable cause and exigent circumstances to allow the officers to cross into the protected area and seize the contraband. Here there was no *769 warrant. On the other hand, there was probable cause given the immediately apparent contraband nature of the plants, so exigent circumstances, if they existed, could have justified a seizure of the contraband. However, I do not agree that such circumstances existed. The majority relies on the following facts to establish exigent circumstances: “[t]he plants were small and easily transportable, [ ] there was a passenger vehicle in the driveway,” and two dogs were roaming around the yard. From these facts, the inference is drawn that someone was at home and could destroy the plants after the officers left the scene. Even if the officers assumed someone was at the residence, these facts do not create a typical “exigent circumstances” fact pattern. Usually, the suspect and the contraband are in one location, and the officers are in a different location — as in, the officers are outside the house and the suspect is inside with the contraband, contemplating potential destruction of it. See, e.g., State v. Rojas,_ N.C. App._, 745 S.E.2d 374, 2013 WL 2407224, at *5 (2013) (unpublished) (explaining that “marijuana is often times disposed of by flushing it down the toilet or putting it in the garbage disposal”). Here, on the other hand, it is the officers and the contraband that are together, and the suspect is nowhere to be seen. If these circumstances support a finding of exigent circumstances, it is difficult to imagine when a simple sighting of portable contraband would not. See State v. Yananokwiak, 65 N.C. App. 513, 517, 309 S.E.2d 560, 563 (1983) (“The state’s argument that exigency is shown simply because drugs are easily destroyed would permit the exigency exception to swallow the entire warrant requirement.”). Finally, the burden is on the State to prove the exigent circumstances. State v. Allison, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979) (citation omitted). Here the State did not present any evidence to the trial court regarding exigent circumstances, but argued for it and the trial court found as fact: “That this seizure was to prevent [what appeared to marijuana plants’] destruction.” The basis for this finding is not apparent, and the trial court made no conclusions of law on that issue. Therefore, exigent circumstances cannot properly justify the officers’ intrusion into defendant’s protected curtilage.
For these reasons, I conclude that the officers were not justified in seizing the plants here. In my view, defendant’s Fourth Amendment rights were violated and the evidence should have been suppressed.
Having determined that the challenged evidence was obtained in violation of defendant’s Fourth Amendment rights, and thus should have been suppressed, the issue to me becomes whether erroneous *770 admission of the evidence constitutes plain error. In State v. Lawrence, 365 N.C. 506, 723 S.E.2d 326 (2012), we recently “reaffirm[ed]” the principles forming “the plain error standard of review” on appeal:
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice — that, after examination of the entire record, the error had a probable impact on the jury’s finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
Id. at 518, 723 S.E.2d at 334 (brackets, citations, and internal quotation marks omitted). I disagree with the assertion that the consideration of inadmissible evidence does not affect the “fairness, integrity, or public reputation of judicial proceedings.” Id. In my view, it does exactly that. The majority appears to suggest that because defendant actually possessed the contraband, his conviction does not offend our justice system. I cannot agree with that premise. In my view, a conviction obtained with evidence which should not have been admitted is as offensive to our justice system as a wrongful conviction.
For the above reasons, I respectfully dissent.
Justice BEASLEY joins in this dissenting opinion.